**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
IN RE *EX PARTE* APPLICATION OF TRACEY AMON
FOR AN ORDER TO OBTAIN DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS          Case No.: 2022-CV-

                      Applicant.
-------------------------------------------------------------------x

## EX PARTE APPLICATION FOR ORDER
## TO OBTAIN DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Kevin Murphy, declares under penalty of perjury as follows:

1. I am an attorney admitted to practice before this Court and am a partner of the law firm Wuersch & Gering LLP, attorneys for Tracey Amon. I make this application on behalf of Ms. Amon and in support of her request for an order to obtain discovery for use in a foreign tribunal pursuant to 28 U.S.C. § 1782.

2. The discovery is sought to be obtained from Christie's, the internationally renowned auction house, one of whose main branches is located at 20 Rockefeller Plaza, New York, New York 10020. It is this Manhattan branch of Christie's that likely maintains the documents at issue in this application.

        3. <u>The Relevant Parties and Foreign Proceedings</u>

4. Tracey Amon is the widow of Maurice Alain Amon ("Decedent"), who until his death in 2019, was the sole beneficial owner of number of companies with estimated personal assets exceeding 600 million dollars. Tracey and Maurice Amon were married on December 22, 2008, in Hong Kong, without a marriage contract.

5. On September 29, 2015, Decedent filed for divorce from Tracey Amon in Monaco and before notifying his wife of the proceeding, removed more than 20 pieces of artwork worth more than a $25 million from their joint residence at 834 Fifth Avenue, New York, New York.

1

Maurice Amon was restrained from entering the building following the removal of these pieces of artwork. Decedent also removed valuable artwork from Ms. Amon's residence at 2 Rue Du Cirque, Paris, France 75008, including the work known as SAXAPHONE (1986) by Jean-Michel Basquiat (the "Basquiat Work"). (A true and complete copy of the Christie's Basquiat Work Sales Flyer is attached as Exhibit 1).

6. Following the removal, Decedent caused the Basquiat work to be shipped to New York, and consigned to Christie's. The Basquiat Work appeared as Lot 45B for Christie's Post-War and Contemporary Evening Sale, scheduled for November 10, 2015. Christie's estimated the value at between $4,000,000 to $6,000,000. Ms. Amon filed suit in New York Supreme Court under Index Number 161488/2015 and Christie's cancelled the auction on the Basquiat Work.

7. Ultimately, the New York Supreme Court dismissed the action in favor of divorce proceedings over rights to marital assets which Decedent had commenced in the Principality of Monaco. This decision was upheld by the First Department, Appellate Division, on April 12, 2018, which specifically ruled that: "Should a court with jurisdiction over the divorce determine that the wife [Ms. Amon] is entitled to some or all of the artwork, or make a distributive award based on its value, the wife's remedy at that time would be to bring a new action to seek enforcement of the divorce decree". (A complete copy of the Opinion of the First Department is attached as Ex. 2.)

8. In 2021, two other of the pieces Decedent caused to be removed from 834 Fifth Avenue, Opera del Maestro Lucio Fontana "Concetta Spaziale, La Fine di Dio, 1963, and "The Adoration of the Shepherds" by Matthias Stamer appeared in the press release of Tornabuoni Arte, s.r.l., ("Tornabuoni") an art gallery in Florence, Italy. These artworks were apparently consigned to Tornabuoni for sale without the permission or the consent of Ms. Amon. Ms. Amon's attorneys

advised Tornabuoni to that effect. (A complete copy of the letter to Tornabuoni, dated October 8, 2021, is attached as Ex. 4, along with a translation of the letter.)

9. On July 24, 2018, the Decedent executed a will, falsely claiming to be domiciled in the Principality of Monaco and naming his son Albert Amon, from a previous marriage, sole heir, and Silvio Venturi, de facto executor of his estate. The defective will was prepared and executed in order to disinherit Ms. Amon, although she was still married to Decedent.

10. Decedent died on July 26, 2019, in Ramatuelle, France. His death and the attempted disinheritance of Ms. Amon spawned numerous lawsuits in Europe, all of which are pending through the date of this filing.

11. Ms. Amon is the plaintiff in an action against Decedent's co-heir Albert Amon and the de facto executor of Decedent's estate Silvio Venturi, venued in the Bernese Oberland Court in Thun, Switzerland, filed on or about February 3, 2020, under docket number CIV 20 2324. In that action, Ms. Amon seeks to invalidate the illegal disinheritance clause and to liquidate matrimonial assets. The couple's contemporaneous domicile and return of abode have always been in Gstaad in the Canton of Bern, Switzerland, where the couple had their largest real estate portfolio and their primary residence, Chalet MATA, a 30,000 square foot home and where Ms. Amon's minor children, from her first marriage, attended school, and where her three (3) family dogs lived.

12. Ms. Amon is also the plaintiff in an action against Decedent's co-heir and de facto executor Venturi in the Cantonal Large Claims Chamber, Lausanne under docket number CC 20.006610, where Decedent was born and in Monaco under docket 2020/00415. These actions were filed on February 3 and February 28, 2020, respectively, and deal with substantially the same subject matter.

13.   Finally, Ms. Amon is the defendant in an action Decedent's co-heir Albert Amon and de facto executor Venturi brought to the Justice of the Peace in Lausanne under docket ST19.037350 to liquidate the estate of her husband without giving Ms. Amon the right to be heard.

14.   Collectively, these actions shall be referred to as the Foreign Proceedings.

15.   Decedent's co-heir Albert Amon has been a citizen of Switzerland since at least 2013.

16.   Decedent's de facto executor Venturi is a citizen of Switzerland, and, upon information and belief resides in the Principality of Monaco.

## The Proceedings

17.   On October 16, 2019, the Justice of the Peace in Lausanne exercised jurisdiction over the estate. Ms. Amon appealed, and the exercise of jurisdiction was annulled on January 14, 2020 as a violation of Ms. Amon's right to be heard.

18.   On May 5, 2020, the Lausanne Justice of the Peace again exercised jurisdiction over Decedent's estate. Ms. Amon appealed the matter to the Swiss Federal Court, alleging she was deprived of the ability to demonstrate that Decedent falsified where was domiciled in order to divest Ms. Amon of her rights as Decedent's spouse, and potentially for other purposes. Again, the exercise of jurisdiction was annulled: "as the judgment appears to be quite incomplete with regard to the relationship that the deceased had with Gstaad [Switzerland], an aspect that the evidentiary requirements that were set aside [by the Lausanne Court] were specifically intended to clarify."[1] The Swiss Federal Court also declared that:

> In the state of the findings of the judgment under review, it cannot be said that the ties that the deceased had with Monaco outweighed his ties with Gstaad in terms of intensity given that it has not been shown that the deceased severed all ties with Switzerland from the time of his alleged installation in the Principality in 2011.

---

[1] The Federal Court determination is attached as Exhibit 5 to this Declaration.

4

> In any case, it should be remembered that he was an international businessman with an imposing fortune, in particular real estate; the presence of personnel subject to Swiss law and vehicles…"

Based on its findings, the Federal Court remanded the matter to the Lausanne Court for further discovery, including an investigation of Decedent's domicile. *See* Exhibit 5, attached.

19. On December 9, 2020, the Cantonal Large Claims Chamber Lausanne granted Ms. Amon's motion to suspend the proceedings she had brought under docket number CC 20.006610. Defendants appealed the suspension to the Civil Chamber of Appeal, which dismissed the appeals on February 16, 2021. The case will remain suspended until the Bernese Oberland Court determines the issue of Decedent's domicile.

20. A determination in Ms. Amon's favor applying Swiss law in the Bernese Oberland Court would have a substantial effect on just distribution of the marital estate.

21. Further, under Swiss law, Ms. Amon as a widow and a virtual heir is entitled to obtain any and all information about the estate of her deceased husband which it is believed has been concealed using a network of offshore and tax haven entities. The purpose of such concealment appears to be to convert or sell as much of the marital assets to which Ms. Amon is entitled as possible.

22. Under Swiss law, heirs, and co-heirs are entitled to obtain information from third parties concerning a decedent's assets. *See* Declaration of F. Sardet, ¶39.

## The Sought Discovery

23. Decedent's efforts, and the efforts of his estate to liquidate marital assets are in clear derogation of Ms. Amon's rights as a spouse and heir to Decedent. Ms. Amon seeks any and all documents concerning communications, including consignment agreements and any sales

documents executed between Christie's and Decedent, or any representatives of Decedent's estate.

24. Ms. Amon, as both claimant and party in the Foreign Proceedings, is an "interested person" within the meaning of 28 U.S.C. § 1782.

25. In addition, as set forth more fully in the annexed Amon Declaration, the Declaration of Fanette Sardet concerning the Foreign Proceedings and Swiss inheritance law, and in the Memorandum of Law submitted herewith, the four discretionary factors that this Court should consider in determining whether to grant the requested relief all favor Ms. Amon.

26. The requests are neither unduly intrusive or burdensome. Ms. Amon has limited the information sought to communications between Decedent, anyone acting on Decedent's behalf or on behalf of Decedent's estate from 2015 to present. A form of subpoena is attached as Exhibit 3.

27. Having satisfied the elements of the Section 1782, it would be proper for the Court to exercise its discretion and permit the discovery requested.

28. Ms. Amon is prepared to pay the reasonable expenses which Christie's may incur in producing the documents required by the subpoena.

29. Furthermore, as shown in the accompanying Memorandum of Law, it is permissible for Ms. Amon to submit an *ex parte* application under Section 1782 and for this Court to issue an ex parte order granting the discovery requested. The *ex parte* procedure is permissible because, in the event the subpoenaed party chooses not to comply with the requests for documents, it retains the right to seek to quash or modify the subpoena. No previous application for similar relief has been made.

30. In an effort to proceed as transparently as possible, Ms. Amon transmitted all the papers filed with the Court relating to this *ex parte* application upon Venturi and Decedent's co-heir Albert Amon and the other heirs on November 9, 2022 by Federal Express and on November 13, 2022 by electronic mail on the attorneys for these parties in the Foreign Proceedings.

WHEREFORE Applicant Tracey Amon prays for an Order of this Court:

(1) Granting discovery pursuant to 28 U.S.C. § 1782, as detailed in the proposed subpoena attached as Exhibit 3;

(2) Ordering that Kevin Murphy, and any other attorney affiliated with the law firm of Wuersch & Gering LLP and admitted to the United States District Court for the Southern District of New York, be appointed to obtain the requested documents and to issue the subpoena to obtain such discovery pursuant to the Federal Rules of Civil Procedure, and

(3) Granting such other and further relief as this Court seems just and proper.

Executed: December 2, 2022
New York, New York

*Kevin Murphy* (signature)