Bundesgericht
Tribunal fédéral
Tribunale federale
Tribunal federal



5A_653/2020

# Arrêt du 2 février 2022
## IIe Cour de droit civil

**Composition**

MM. les Juges fédéraux Herrmann, Président,
Marazzi et Bovey.
Greffier : M. Braconi.

**Participants à la procédure**

Tracey **Hejailan-Amon**,
834 Fifth Avenue, 10065 New York, Etats-Unis,
représentée par Mes François Roux et
Fanette Sardet, avocats,
rue de la Paix 4, 1003 Lausanne,
recourante,

**contre**

1. Albert **Amon**,
   Lacets Saint Leon 6, Château Périgord II,
   98000 Monaco, Monaco,
   représenté par Mes Stéphane Lagonico et
   Cédric Aguet, rue du Grand-Chêne 8,
   case postale 5463, 1002 Lausanne,
2. Silvio **Venturi**,
   c/o Investmon Corp., 4, avenue des Citronniers,
   98000 Monaco, Monaco,
   représenté par Me Antoine Eigenmann, avocat,
   place Bel-Air 1, 1003 Lausanne,
intimés.

**Objet**

succession, compétence,

recours contre l'arrêt de la Chambre des recours civile du
Tribunal cantonal du canton de Vaud du 22 juin 2020
(ST19.037350-200690 150).

**Faits :**

**A.**

Par testament notarié du 24 juillet 2018, dressé à Monaco, Maurice Amon (1951), originaire de Lausanne, a notamment révoqué toutes ses dispositions pour cause de mort antérieures (art. 1er), institué son fils Albert Amon en qualité d'héritier universel unique (art. 3), exhérédé son épouse Tracey Hejailan-Amon (art. 5) et désigné Silvio Venturi, à Monaco, en qualité d'exécuteur testamentaire (art. 6). Il a déclaré qu'il était domicilié à Monaco depuis le 15 juin 2011 et entendait soumettre l'ensemble de sa succession mobilière et immobilière au droit matériel suisse (*professio juris* en faveur de sa loi nationale). Le 17 mars 2019, il a rédigé un codicille en la forme olographe, confirmant les termes de ce testament. Il est décédé le 26 juillet 2019 en France.

**B.**

Les époux Amon étaient en instance de divorce au moment du décès de Maurice Amon.

Par jugement du 14 février 2019, le Tribunal de première instance de la Principauté de Monaco s'est déclaré compétent pour connaître de la procédure en divorce; il a retenu en bref que, à la date de l'introduction de l'instance, le mari avait établi son domicile à Monaco et qu'il n'était pas contesté qu'il y était encore domicilié. L'appel que l'épouse a formé à l'encontre de cette décision est devenu sans objet à la suite du décès de Maurice Amon.

**C.**

**C.a** Le 19 août 2019, Me Antoine Eigenmann – agissant en qualité de représentant de Silvio Venturi – a transmis au Juge de paix du district de Lausanne le testament du 24 juillet 2018 (*supra*, let. A), ainsi qu'un acte de décès. Le 21 août suivant, il a informé ce magistrat que Silvio Venturi acceptait sa mission d'exécuteur testamentaire.

Le 22 août 2019, le juge de paix a communiqué aux conseils d'Albert Amon et Tracey Hejailan-Amon les lettres des 19 et 21 août 2019, en les invitant à se déterminer jusqu'au 2 septembre 2019 sur la question de sa compétence pour connaître de la dévolution de la succession en cause. Les intéressés ont déposé des observations.

**C.b** Le 16 octobre 2019, le juge de paix s'est déclaré compétent pour connaître de la dévolution de la succession de feu Maurice Amon. Ce jugement a été annulé le 14 janvier 2020 par la Chambre des recours

civile du Tribunal cantonal du canton de Vaud pour violation du droit d'être entendu de Tracey Hejailan-Amon.

**C.c** Statuant à nouveau le 5 mai 2020, le juge de paix a notamment rejeté les réquisitions de production de pièces présentées le 13 mars 2020 par Tracey Hejailan-Amon (I), admis sa compétence territoriale pour connaître de la succession de feu Maurice Amon (II) et ouvert la procédure de dévolution successorale avec effet au jour du décès (III), avec suite de frais et dépens à la charge de la prénommée (V-VIII).

Par arrêt du 22 juin 2020, la Chambre des recours civile du Tribunal cantonal vaudois a confirmé cette décision.

**D.**
Par mémoire mis à la poste le 14 août 2020, Tracey Hejailan-Amon exerce un recours en matière civile au Tribunal fédéral; à titre principal, elle conclut à l'annulation de l'arrêt cantonal et au renvoi de la cause à l'autorité cantonale pour complément d'instruction et nouvelle décision au sens des considérants; à titre subsidiaire, elle conclut à la réforme de l'arrêt déféré en ce sens que le Juge de paix du district de Lausanne n'est pas compétent pour connaître de la dévolution successorale de feu Maurice Amon.

Invités à présenter des observations, les intimés proposent le rejet du recours dans la mesure de sa recevabilité. Les parties ont procédé à un ultérieur échange d'écritures.

**E.**
Par ordonnance du 16 septembre 2020, le Président de la IIe Cour de droit civil a rejeté la requête d'effet suspensif de la recourante.

**F.**
Par arrêt du 5 janvier 2022, la Cour de céans a déclaré irrecevable le recours en matière civile des intimés contre un arrêt de la Chambre des recours civile du Tribunal cantonal vaudois confirmant la suspension d'une procédure de conciliation entre les mêmes parties jusqu'à droit connu dans la procédure introduite par la recourante auprès du Tribunal de l'Oberland bernois (arrêt 5A_359/2021 et 5A_375/2021).

**Considérant en droit :**

1.

1.1 Le recours a été déposé dans le délai légal (art. 100 al. 1 LTF, en lien avec l'art. 46 al.1 let. *b* LTF) contre une décision (incidente) sur la compétence (art. 92 LTF) prise en matière civile (art. 72 al. 1 LTF) par une juridiction cantonale de dernière instance ayant statué sur recours (art. 75 al. 1 et 2 LTF). La valeur litigieuse atteint amplement le seuil légal (art. 74 al. 1 let. *b* LTF).

1.2 Les intimés prétendent que le recours est irrecevable en raison de l'"*absence d'intérêt à recourir*". Cette opinion apparaît inexacte. Aux fins de l'art. 76 al. 1 let. *b* LTF, la qualité pour recourir appartient à celui qui a formulé des conclusions devant l'autorité précédente et qui en a été (totalement ou partiellement) débouté (ATF 133 III 421 consid. 1.1 et les citations), conditions manifestement remplies en l'espèce.

Même du point de vue d'un prétendu défaut de lésion matérielle (*cf.* à ce sujet, parmi plusieurs: CORBOZ, *in*: Commentaire de la LTF, 2e éd., 2014, n$^{os}$ 35 ss ad art. 76 LTF), cette qualité n'est pas douteuse. Les considérations relatives à l'exhérédation de la recourante à teneur du testament du 24 juillet 2018 sont d'emblée hors de propos; cet aspect est étranger au présent litige, circonscrit à la compétence à raison du lieu des juridictions vaudoises (*cf.* ATF 142 I 155 consid. 4.1.2). Pour le surplus, l'argumentation des intimés revient à exiger de la partie qui conteste une décision d'incompétence qu'elle démontre de surcroît que ses prétentions sur le fond pourraient se trouver compromises devant le juge tenu pour incompétent. Tel n'est pas le cas; la recourante a le droit à ce que sa cause soit tranchée par le tribunal compétent, sans avoir à justifier d'un intérêt à ce que le procès se déroule à un "*autre for successoral*" que celui du lieu d'origine (GULDENER, Schweizerisches Zivilprozessrecht, 3e éd., 1979, p. 281 n. 7 et p. 495).

2.

2.1 En l'espèce, la compétence des juridictions *suisses* pour connaître de la succession de feu Maurice Amon n'est pas douteuse. Même si le dernier domicile de l'intéressé se trouvait à Monaco à l'époque de son décès – ce que conteste la recourante –, lesdites autorités seraient de toute façon compétentes sur la base de la *professio juris* incluse dans le testament du 24 juillet 2018 (art. 87 al. 2 LDIP; *supra*, let. A), dont la validité n'est pas remise en question. C'est en revanche la compétence *locale* qui est controversée dans le cas présent. Si le dernier domicile

du *de cujus* était en Suisse (Gstaad), les autorités du canton de Berne seraient compétentes, étant rappelé que l'art. 86 al. 1 LDIP vise tant la compétence internationale que locale (arrêt 5A_973/2017 du 4 juin 2019 consid. 2.2). Les tribunaux du canton de Vaud seraient compétents, en tant qu'"*autorités suisses du lieu d'origine*" (art. 87 al. 2 LDIP), dans le cas où l'intéressé – citoyen suisse et originaire de Lausanne – aurait eu son dernier domicile dans la Principauté; cette compétence est de surcroît exclusive (arrêt 5P.274/2002 du 28 octobre 2002 consid. 4.1 et la doctrine citée).

**2.2** En vertu de l'art. 20 al. 1 let. *a* LDIP, qui se fonde sur les mêmes critères que l'art. 23 al. 1 CC (ATF 119 II 167 consid. 2b), une personne physique a son domicile dans l'État où elle réside avec l'intention de s'y établir. La notion de domicile comporte deux éléments: l'un objectif, la présence physique dans un endroit donné; l'autre subjectif, l'intention d'y demeurer de façon durable (ATF 141 V 530 consid. 5.2; 137 II 122 consid. 3.6; 136 II 405 consid. 4.3). Ce dernier élément ne repose pas sur la seule volonté (interne) de l'intéressé, mais sur les circonstances objectives, reconnaissables pour les tiers, permettant d'en déduire une telle intention (ATF 141 V 530 consid. 5.2; 137 II 122 consid. 3.6; 120 III 7 consid. 2b). À cet égard, les documents administratifs (permis de circulation ou de conduire, papiers d'identité, attestations de la police des étrangers, etc.) et ceux des autorités fiscales ou des assurances sociales, ou encore les renseignements contenus dans des décisions judiciaires ou des publications officielles, ne sont pas déterminants à eux seuls; ils constituent certes des indices sérieux de l'existence d'un domicile, mais sans l'emporter sur l'endroit où se focalise un maximum d'éléments touchant à la vie personnelle, sociale et professionnelle de l'intéressé (ATF 141 V 530 consid. 5.2; 136 II 405 consid. 4.3; 125 III 100 consid. 3; *cf.* parmi plusieurs: arrêt 5A_419/2020 du 16 avril 2021 consid. 2.2, avec d'autres citations).

**2.3** Le lieu où la personne réside (élément objectif) et son intention de s'y établir (élément subjectif) relèvent de l'établissement des faits, que le Tribunal fédéral ne censure qu'en cas d'arbitraire (art. 97 al. 1 LTF, en relation avec l'art. 9 Cst.). Toutefois, lorsque l'autorité précédente ne revoit – comme ici (art. 320 let. *b* CPC; BASTONS BULLETTI, *in*: Petit commentaire CPC, 2021, n°s 3-5 ad art. 320 CPC) – que sous l'angle de l'arbitraire la constatation des faits et l'appréciation des preuves, il contrôle librement la manière dont cette juridiction a fait usage de sa cognition restreinte (arrêt 5A_703/2019 du 27 avril 2019 consid. 2.2.2 et la jurisprudence citée).

**3.**

**3.1** En l'espèce, l'autorité cantonale a retenu que le premier juge avait renvoyé expressément à des pièces produites par la recourante, tout en relevant que, si elles contenaient des indices en faveur d'un centre d'intérêts à Saanen en 2015, elles n'étaient pas déterminantes aux fins de la compétence, compte tenu de leur "*ancienneté*". Le premier juge a considéré que le domicile du défunt était à Monaco, en se fondant sur des pièces produites par Albert Amon et l'exécuteur testamentaire; il a procédé à une appréciation anticipée des preuves, qui n'est entachée d'aucun arbitraire. Elle résulte ainsi de la concordance entre la claire affirmation du *de cujus* d'un domicile à Monaco dans son testament du 24 juillet 2018 et le codicille du 17 mars 2019, de la reconnaissance, après contrôles et vérifications, de l'effectivité d'un tel domicile par les autorités judiciaires et administratives monégasques et de la négation d'un domicile fiscal (illimité) bernois par l'administration communale de Saanen, de la jouissance d'une habitation, de la présence de véhicules et d'une embarcation, de personnel sur place, de participations et de liens sociaux et mondains, ou encore des traitements médicaux qui y ont été prodigués. Les preuves d'un potentiel rattachement du défunt à Saanen étant plus anciennes – comme cela ressort notamment des pièces jointes à une écriture du 13 mars 2020 –, le premier juge, dont la conviction était forgée, était habilité à ne pas compléter inutilement l'instruction de la cause; le simple fait qu'un centre des intérêts du *de cujus* ait potentiellement existé dans la commune bernoise n'implique pas la nécessité de contrôler si un tel centre d'intérêts dans cet endroit subsistait encore au jour du décès, quatre ans plus tard.

Aucun élément objectif du dossier ne permet de suspecter l'existence d'un autre domicile ou lieu de séjour du défunt, si bien que la question n'a pas besoin d'être examinée plus avant par le premier juge. Le fait que les époux Amon se soient opposés sur ce point dans le cadre de leur divorce n'est pas déterminant; en effet, les pièces requises par la recourante apparaissent d'autant moins pertinentes que les autorités monégasques se sont précisément penchées sur leur compétence et ont admis un domicile conjugal à Monaco. Dans ces circonstances, les seules déclarations de la recourante, qui s'obstine à prétendre que le domicile monégasque de son époux serait fictif, ne suffisent pas pour justifier un complément d'instruction. Par conséquent, le premier juge s'est à juste titre déclaré compétent pour connaître de la dévolution de la succession du *de cujus* et n'a pas enfreint le droit d'être entendue de la prénommée.

Enfin, les magistrats précédents ont relevé que les pièces du dossier prouvaient l'existence d'un domicile à Monaco au jour du décès du *de cujus*. C'est sans prêter le flanc à la critique que le premier juge s'est persuadé de l'existence des circonstances qui fondent sa compétence au regard des art. 20 al. 1 let. *a* et 87 al. 2 LDIP. S'il est exact que le juge doit rechercher d'office si des faits s'opposent à sa compétence, il n'est pas tenu de faire des recherches étendues injustifiées; or, comme on l'a vu, aucune circonstance objective ne justifiait de procéder à des investigations plus poussées concernant un hypothétique domicile en Suisse du *de cujus* au moment de son décès. La prétendue nécessité pour l'intéressé de faire croire à un domicile à Monaco afin d'y obtenir un for pour la procédure de divorce ne constitue en particulier pas une telle circonstance; en homme d'affaires avisé, entouré de conseillers chevronnés, le *de cujus* avait à l'évidence compris l'importance de son domicile monégasque, si bien qu'on peut en tirer qu'il a veillé, pendant les deux dernières années de sa vie notamment, non pas à tromper habilement les autorités quant au lieu de son domicile réel, mais à se conformer soigneusement aux exigences juridiques pour convaincre de l'effectivité de ce domicile. L'argument déduit de la conscience que le *de cujus* avait de l'enjeu économique lié à son domicile – soulevé par la recourante – plaide en définitive pour un domicile à Monaco.

**3.2** La recourante dénonce une violation de son droit d'être entendue découlant de l'art. 29 al. 2 Cst.; en outre, elle reproche à la juridiction précédente d'avoir violé les art. 20 al. 1 let. *a*, 86 al. 1 et 87 al. 2 LDIP "*en lien avec une appréciation arbitraire des preuves*".

**3.3** Les motifs de l'autorité précédente n'emportent pas la conviction quant à la présence du dernier domicile du *de cujus* à Monaco.

La "*claire affirmation*" du *de cujus* dans son testament et son codicille quant à son domicile à Monaco n'est pas déterminant (arrêt 4C.4/2005 du 16 juin 2005 consid. 4.1, *in*: SJ 2005 I p. 501), la notion de domicile n'étant pas dictée – comme on l'a vu (*supra*, consid. 2.2) – par la seule volonté intime de l'intéressé. Les nombreux documents administratifs auxquels s'est référée la juridiction précédente, à la suite du premier juge (certificat de résidence, cartes de résidents délivrées entre 2011 et 2017, permis de conduire et taxes de circulation de huit véhicules, conclusions récapitulatives du Ministère public de Monaco, jugement du Tribunal de première instance de Monaco, attestation du Chef de la Division de Police administrative de la Principauté de Monaco, lettre du Ministère de l'Intérieur monégasque, permis international de conduire, courrier de l'Administration fiscale de la commune de Saanen, acte de

naturalisation et attestation d'assurance du yacht, ordonnance du Juge de paix monégasque relative à un appartement à Monaco, attestations d'affiliation aux Caisses sociales, etc.) n'apparaissent pas davantage décisifs à ce propos (*supra*, consid. 2.2; arrêt 9C_675/2014 du 11 août 2015 consid. 4.3, avec d'autres citations); la jurisprudence a d'ailleurs rejeté l'avis d'après lequel, en matière internationale, "*il faut s'en tenir aux renseignements qui ressortent des documents administratifs*" (arrêt 5C.289/2006 du 7 juin 2007 consid. 4.5 [*i.c.* domicile en Suisse indiqué dans le passeport du *de cujus*, qui ne servait en réalité "*qu'à créer un rattachement fiscal*"]).

En effet, ces éléments ne constituent que des indices qui doivent être corroborés par une "*présence physique*" d'une certaine durée dans le pays en question (*supra*, consid 2.2; à titre d'exemple: ATF 136 II 405 consid. 4.5). Lorsque, comme ici, plusieurs endroits entrent en ligne de compte, parce que la personne a des attaches avec chacun d'eux, le principe de l'unité du domicile (art. 23 al. 2 CC et 20 al. 2 LDIP) impose un choix; le domicile se trouve au lieu avec lequel l'intéressé entretient les relations les plus étroites, cette question étant résolue sur la base de l'ensemble des circonstances (ATF 136 II 405 consid. 4.3; *cf*. parmi d'autres: arrêt 4P.275/1995 du 20 février 1997 consid. 3a/bb). Or, en l'occurrence, l'arrêt entrepris apparaît pour le moins lacunaire au sujet des relations que le *de cujus* entretenait avec Gstaad, aspect que les réquisitions probatoires écartées avaient précisément pour objectif de clarifier. À cet égard, comme le relève la recourante, la cour cantonale ne saurait, tout à la fois, tirer profit de l'ancienneté des preuves d'un "*potentiel rattachement du défunt à Saanen*" et refuser d'administrer les preuves plus récentes ("*entre 2015 et 2019*") qui pourraient corroborer un dernier domicile en ce lieu, d'autant qu'elles constituent le pendant des pièces produites par les intimés eux-mêmes. Les déductions tirées de la présence de véhicules, d'un yacht et de personnel, ainsi que de la participation à la vie sociale et mondaine de la Principauté, ne sont certes pas dénuées de poids, mais encore faut-il que la durée et les modalités de l'installation en ce lieu ne soient pas contredites par des éléments qui trahiraient un séjour intermittent (*cf*. arrêt 4C.65/2005 du 28 avril 2005 consid. 3); en l'état des constatations de l'arrêt entrepris, on ne peut pas affirmer que les liens que le *de cujus* a entretenus avec Monaco l'emporteraient par leur intensité sur ses attaches avec Gstaad, étant observé qu'il n'est pas démontré que l'intéressé aurait rompu tous ses liens avec la Suisse à compter de sa prétendue installation dans la Principauté en 2011. Au demeurant, il convient de rappeler qu'il était un hommes d'affaires international disposant d'une imposante fortune, en particulier immobilière; la présence de personnel soumis à la législation

monégasque et de véhicules – le yacht ne pouvant guère être amarré à Gstaad – n'a donc rien d'insolite.

Enfin, il ne ressort pas de la décision attaquée (art. 105 al. 1 LTF) que le *de cujus* avait à Monaco "*sa famille (son fils unique, sa belle-fille et ses deux petites-filles), avec laquelle il entretenait une relation étroite*", comme l'affirme l'intimé n° 1. Une telle allégation ne saurait ainsi être prise en considération (art. 99 al. 1 LTF).

**3.4** Faute de comporter les constatations suffisantes pour l'application de la loi, l'arrêt déféré viole le droit fédéral (ATF 134 V 53 consid. 4.3; 133 IV 293 consid. 3.4.1); par conséquent, la cause doit être renvoyée à l'autorité précédente pour qu'elle complète l'instruction, cas échéant en donnant suite aux réquisitions de preuves de la recourante.

**4.**
En conclusion, le présent recours doit être admis, la décision attaquée annulée et l'affaire renvoyée à l'autorité précédente pour qu'elle statue à nouveau (art. 107 al. 2 LTF). Les frais et dépens de la procédure fédérale incombent solidairement aux intimés (art. 66 al. 1 et 5; art. 68 al. 1, 2 et 4 LTF), qui succombent (ATF 141 V 281 consid. 11.1; parmi d'autres: arrêts 5A_128/2021 du 19 avril 2021 consid. 4; 5A_1051/2020 du 28 avril 2021 consid. 5).

**Par ces motifs, le Tribunal fédéral prononce :**

1.
Le recours est admis, la décision attaquée est annulée et la cause est renvoyée à l'autorité précédente pour nouvelle décision.

2.
Les frais judiciaires, arrêtés à 10'000 fr., sont mis solidairement à la charge des intimés.

3.
Une indemnité de 12'000 fr., à payer à la recourante à titre de dépens, est mise solidairement à la charge des intimés.

4.
Le présent arrêt est communiqué aux parties et à la Chambre des recours civile du Tribunal cantonal du canton de Vaud.

Lausanne, le 2 février 2022

Au nom de la IIe Cour de droit civil
du Tribunal fédéral suisse

Le Président :                                    Le Greffier :

Herrmann                                          Braconi