# EXHIBIT 2

# Affirmation Of Maurice Alain Amon

EX 2

FILED: NEW YORK COUNTY CLERK 02/24/2017 03:02 PM
NYSCEF DOC. NO. 104
INDEX NO. 161488/2015
RECEIVED NYSCEF: 02/24/2017

FILED: NEW YORK COUNTY CLERK 01/22/2016 05:24 PM
NYSCEF DOC. NO. 3
INDEX NO. 161488/2015
RECEIVED NYSCEF: 01/22/2016

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
---------------------------------------------------------------X
TRACEY HEJAILAN-AMON

        Plaintiff,

-against-

MAURICE ALAIN AMON,
ARTMON LIMITED,
THE HELLER GROUP, LLC,
SANFORD (a/k/a "SANDY") HELLER, and
CROZIER FINE ARTS INC.,

        Defendants.
---------------------------------------------------------------X

Index No. 161488/2015

(Hon. Robert R. Reed)

**AFFIRMATION OF
MAURICE ALAIN AMON
IN SUPPORT OF
MOTION TO DISMISS**

MAURICE ALAIN AMON, under penalty of perjury hereby affirms as follows:

1. I am a defendant in the above-entitled action as well as being the sole owner of Artmon Limited (hereinafter "Artmon"), which is also a defendant. I am submitting this affirmation in support of my motion to dismiss the First Amended Complaint (hereinafter "Complaint") as it pertains to both me and Artmon pursuant to CPLR 3211 (a)(7), (a)(4) and (a)(8).

2. This is a proceeding instituted by my wife, which concerns 20 works of art, 19 of which I and my wholly owned entities purchased and own. Neither Plaintiff nor I are domiciled in New York. We have an apartment here, title to which I put in my wife's name at her request in 2013, namely Unit 5-B at 834 Fifth Avenue (hereafter the "Apartment") where I hung most of the artworks in question for a period of time. On October 6 and 13, 2015 I removed most of the works in question from that apartment to an art storage facility in Manhattan. I requested the Plaintiff's permission to remove the balance of my and Artmon's works of art from the Apartment in a letter to her but instead she commenced this proceeding.

FILED: NEW YORK COUNTY CLERK 02/24/2017 03:02 PM
NYSCEF DOC. NO. 231

INDEX NO. 161488/2015
RECEIVED NYSCEF: 02/24/2017

## My Fine Art Collection and the Artworks Targeted by Plaintiff's Complaint

3.   I own a worldwide art collection with a value exceeding $100 million (hereinafter "the Artmon Collection"). Most of the works in the collection have been purchased through my single-purpose company, Artmon. Artmon regularly buys and sells works of art and the collection is maintained as much as an investment as for any personal or aesthetic reasons. The collection is housed primarily in residences in Monaco, where I am domiciled, France, Switzerland and in the New York Apartment, as well as in warehouse facilities where works of art that are not currently being displayed are stored. From time to time, works are also displayed for public view in galleries or other public places.

4.   As is typical for many serious art collectors, I have used entities to hold and trade the artworks in my collection. For this purpose I formed Artmon, a BVI company, in 2007. I am the sole owner of Artmon and one of its two directors, the other being my son, Albert Maximilian Amon. Annexed as Exhibit A to this affirmation is a Certificate of Incumbency (with apostille certificate) for Artmon reflecting its formation, ownership, and the identity of its directors. Luxart Sàrl is another entity I formed in Luxembourg mostly to provide advisory services. I am the sole beneficial owner of Luxart Sàrl as well, although I own that entity indirectly. Annexed hereto as Exhibit B is a declaration of ownership I submitted for Luxart Sàrl in connection with opening a bank account for the entity. Plaintiff has never held any economic interest or other rights in Artmon or Luxart Sàrl. I consider works purchased by me personally, or by either of the entities all part of the Artmon Collection.

5.   The Artmon Collection owns 19 of the 20 artworks at issue in Plaintiff's

2



Complaint (the "Artworks").[1] To prove this fact I have annexed as Exhibit C the invoice given to me by the seller in connection with the sale of each artwork, and my bank statements showing I paid each invoice from my bank account. (Account numbers and prices paid are redacted.)

6. Since purchasing each of the Artworks, neither I nor my entities have ever given, lent, sold, pledged, or otherwise transferred any of the works to Plaintiff. Other than the purchase documents themselves there are no instruments or agreements of any kind affecting ownership interests or rights to possess the Artworks except for a bailment agreement between Artmon and me personally, and consignment agreements between Artmon and its consignees, such as its agreement to consign the Basquiat for sale at Christie's. Therefore, Plaintiff does not have any right to possess the Artworks, or any right to the proceeds in the event works are sold.

7. On April 21, 2011, I entered into a Bailment Agreement with Artmon allowing me to display the Artmon Collection in my homes. A copy of that agreement is annexed hereto as Exhibit E, and the Court's attention is respectfully referred to the WHEREAS clauses at page 1, and to section 1.2 at page 2 (reciting, as a condition for the agreement, that I organize receptions and private parties for art collectors and connoisseurs in my residences). Pursuant to the terms of the agreement I am required to "maintain, preserve, and take care of the Bailed Artworks..." and I am strictly liable to Artmon for any loss or damage. §§ 2.1, 2.3, at pg. 2. The Artmon Collection owns all of the Artworks at issue here. Clearly, I cannot meet my obligations

---

[1] The 20th artwork identified in Plaintiff's Complaint is by Alexander Calder—The Vine (1944) (the "Calder"). While that work was erroneously invoiced by the seller to Luxart Sàrl in November 2010, it apparently was re-invoiced to the Plaintiff who actually purchased it, a fact which I did not focus on until this litigation forced me to gather all of the ownership records for all of the artworks referred to in Plaintiff's Complaint. The November 2010 invoice, and the October 2012 Statement confirming Plaintiff's purchase of the Calder painting, are annexed hereto, together as Exhibit D. For the time being, however, the Calder painting is in Crozier's bonded art storage facility and one of the works restrained by the TRO issued by this Court. I am immediately prepared, subject to an amendment to the TRO allowing me to do so, to return the Calder to the Apartment at my expense.

3



FILED: NEW YORK COUNTY CLERK 02/24/2017 03:02 PM
NYSCEF DOC. NO. 231

INDEX NO. 161488/2015
RECEIVED NYSCEF: 02/24/2017

as Bailee under the agreement if the bailed property is stranded in a residence to which my access has been cut off and where the Plaintiff has obtained an order of exclusive occupancy based upon her title to the Apartment. And I agreed with Artmon not to delegate any of my obligations as Bailee. *See* § 4.2, at pg. 2.

8. The Bailment Agreement does not transfer ownership of any works to me; on the contrary, it explicitly bars me from assigning rights to possess Artmon's artworks to any other person. *See* § 4.2, at pg. 2. The consignment agreements, redacted copies of which are annexed hereto as Exhibit F, allow the consignees—the Heller Group and Christies—to sell 5 of the Artworks on Artmon's behalf. They provide for the consignees to pay the net proceeds of sale to Artmon. I am including these documents in my presentation to this Court for the sake of completeness, because they are the only instruments or agreements in force that provide a right to possess any of the Artworks outside of the purchase documents themselves, which I have annexed as Exhibit C.

9. Lastly I am annexing as Exhibit G hereto, the current insurance policy with respect to Artmon Collection, redacted as to information about artwork that is not part of Plaintiff's Complaint. The policy is dated July 23, 2015, that is, after my entities and I had already acquired all of the Artworks, but well before the removal from the Apartment that Plaintiff complains of. The policy lists me as the insured on page 1, and describes the collection insured, on page 6 as: "Private collection of Mr. Amon and/or Artmon Ltd of which he is the sole owner, and/or his son Albert Amon."[2]

---

[2] The policy also covers my son's art collection.

4



### My Marriage to Plaintiff and the New York Apartment

10. The Plaintiff and I married on December 22, 2008. At the time I was 57 years old and had already inherited a substantial personal fortune. I thereafter made gifts to Plaintiff totaling more than $75 million, including real estate and cash gifts totaling approximately $30 million, which she has used to purchase additional assets for herself, including the Calder. See footnote 1, *supra*.

11. I acquired the Apartment in my own name in 2010, to be used as a pied-a-terre. In September 2012, I transferred the Apartment to the joint names of my wife and myself. Then, in 2013, I participated with Plaintiff at her request in transferring the Apartment to Plaintiff's sole name. This transfer of ownership was not intended to, and did not affect our use of the Apartment; I retained my own key and was one of the tenants from the point of view of the building staff who afforded me all of the rights of an owner. In fact I stayed at the Apartment between one and two months each year since 2012 when the renovation work in the Apartment were completed. Furthermore, following the transfer I remain responsible to pay the cooperative maintenance and other financial obligations regarding the Apartment, as can be seen from the Guaranty I furnished to the cooperative corporation in connection with the 2013 transfer, a copy of which is annexed hereto as Exhibit H[3]. Finally, consistent with my responsibilities to Artmon under the Bailment Agreement, and to the insurer of the Artmon Collection under our agreements, I maintained secure conditions for the Artmon Collection at the Apartment. I employed Siemens as security consultants, and central alarm systems, among other protections. I also had a housekeeper visit the apartment on a daily basis, who was specially

---

[3] Plaintiff included the annexed Guarantee with the documents transferring the Apartment to Plaintiff's sole name, which she attached as Exhibit 3 to her order to show cause (NYSCEF DOC # 9). *See* pg. 39 of that Exhibit.

5

FILED: NEW YORK COUNTY CLERK 02/24/2017 03:02 PM
NYSCEF DOC. NO. 231
INDEX NO. 161488/2015
RECEIVED NYSCEF: 02/24/2017

trained to look after the collection. In no sense did I surrender custody of the Artmon Collection art to Plaintiff by hanging them in the Apartment. They remained in my possession.

12. I am a Swiss national, and domiciliary of Monaco since 2011. Annexed hereto collectively as Exhibit I are a copy of the bio page of my current passport, and the Monaco residency cards I have filed starting in 2011. Plaintiff, a US citizen, has not filed a residency card in any jurisdiction, and states in her Complaint that while we lived in various locations around the world, she is not domiciled anywhere. *See* Complaint, ¶ 12 at pg. 4.

13. Plaintiff and I are getting divorced in Monaco. I commenced our matrimonial action in the First Instance Court of Monaco on September 29, 2015. While Plaintiff has alleged here in New York that she will contest Monaco's jurisdiction to adjudicate our divorce (*See* Complaint, ¶ 22, at pg. 7), on January 13, 2016 she applied by counsel in the Monaco divorce action for significant matrimonial relief including alimony, and the exclusive use of homes, cars, and other property. And while she has alleged in her Complaint that we "never resided" in Monaco (*id.*), she spent 63 days at the marital residence in Monaco between May 2015 when the renovation works in the Monaco apartment were completed and my filing for divorce. In any event, Monaco is the only jurisdiction in which there is a matrimonial action pending.

14. WHEREFORE, I respectfully request that this Court dismiss the First, Second and Fourth Causes of Action contained in the First Amended Complaint, which seek to replevy from me, charge me with converting, and prevent me from possessing property to which no person or entity other than me and my wholly-owned entities has any ownership or possessory rights, and grant such other and further relief as it deems just and proper.

15. I affirm this 20th day of January, 2016, under penalty of perjury under laws of New York, which may include a fine or imprisonment, that I am physically located outside the

6

FILED: NEW YORK COUNTY CLERK 02/24/2017 03:02 PM
NYSCEF DOC. NO. 231

INDEX NO. 161488/2015
RECEIVED NYSCEF: 02/24/2017

geographical borders of the United States, Puerto Rico, the U.S. Virgin islands or any territory or insular possession subject to the jurisdiction of the United States, that the foregoing is true, and that I understand that this document may be filed in an action or proceeding in a court of law.

Dated: Monaco
January 20, 2016

Maurice Allain Amon

7