womblebonddickinson.com



June 5, 2023

Womble Bond Dickinson (US) LLP

950 Third Avenue
Suite 2400
New York, NY 10022

**Via ECF**
Hon. Robert W. Lehrburger
United States Magistrate Judge
United States District Court
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, N.Y. 10007-1312

t:  332.258.8400
f:  332.258.8949

Joseph Patella
Partner
Direct Dial: 332-258-8483
E-mail: Joseph.Patella@wbd-us.com

      Re:    *In re Application of Tracey Amon*
             Case No.: 1:22-cv-10251-RA-RWL

Dear Judge Lehrburger:

      Our firm is counsel to Christie's Inc. ("Christie's") in connection with the subpoena issued by this Court pursuant to 28 U.S.C. § 1782 ("§1782") that Tracey Hejailan Amon ("Movant") served upon Christie's in the above-referenced matter (the "Subpoena"). We write in response to Movant's request, by letter of her counsel, Kevin Murphy, dated May 23, 2023 (the "Letter Request"), for a pre-motion conference to address a dispute concerning the scope of the Subpoena. Movant attempts to expand the wording of the Subpoena to now include, *inter alia*, communications and documents between third-party Christie's and third-party Artmon Limited, which Christie's opposes in the interest of preserving the privacy and protecting the integrity of its confidential relationship with its clients.

      As Christie's understands the background of this case, Maurice Alain Amon (hereafter "Decedent") had been a client of Christie's until his death on July 26, 2019. At the time of his death, he was married to Movant from whom he had been separated and in divorce proceedings in Monaco since 2015. During their separation, Movant commenced criminal proceedings against Decedent in Monaco, which did not result in any official action taken against Decedent. Furthermore, on January 14, 2020, the Supreme Court of Bern, Switzerland ruled that such criminal proceedings were "unfounded." (*See* Decision annexed hereto as Exhibit A in original German version and English translation at ¶ 12; *see also* Affidavit of Stéphane Lagonico ("Lagonico Affidavit") annexed hereto as Exhibit B at ¶ 8). Under Swiss law, Movant's filing of unfounded criminal proceedings against Decedent gave him the ability to disinherit her in his will, *see* Lagonico Affidavit at ¶ 3, which is exactly what Decedent did. As a result, Movant lost her status as an heir to Decedent's estate upon his death, and under Monaco and Swiss law, she also lost her right to compel production of information relative to the contents of that estate. *Id.* at ¶ 9.

      According to the Lagonico Affidavit and the official Certificate filed in Monaco by the notary in charge of administering the probate proceedings (annexed hereto as Exhibit C in original French

Hon. Robert W. Lehrburger
June 5, 2023
Page 2



version and English translation), the Foreign Proceedings[1] *previously* considered whether Movant had standing as an heir of the Decedent's estate and whether therefore she had the right to information concerning the assets of Decedent. The Swiss Court concluded that "the applicant's disinheritance has been made credible, which means that she is not entitled to any claims under the law of succession." See Exhibit A at ¶ 12.[2] Additionally, Movant filed applications before a court in Bern, Switzerland and a court in Monaco seeking information about Decedent's assets. Both of those applications were denied because those courts found she has no matrimonial or estate claim. Lagonico Affidavit at ¶¶ 5-6. Those decisions reflect the public policy of Switzerland and Monaco that non-heirs cannot demand private information of a deceased person.

Movant's attempt to discover, through Artmon Limited by way of Christie's, information about the assets of Decedent is therefore squarely an attempt to circumvent foreign proof gathering restrictions. *See In re Microsoft Corp.*, 428 F.Supp.2d 188 (S.D.N.Y. 2006) (refusing request for subpoenas under §1782 where there was persuasive evidence that the foreign tribunal was opposed to, and would not use, the discovery because it violated the rules on access to files in proceedings before the foreign tribunal). Here, the foreign issue is limited to questions of jurisdiction based upon the domicile of Decedent, and Movant has no status to claim any inheritance and therefore no right to any information concerning the assets of the estate. The attempted expansion of the wording of the Subpoena would evade the proof gathering restrictions of the Swiss and Monegasque tribunals and would direct the production of information which is not discoverable in the Foreign Proceedings. Movant's attorney mischaracterizes the nature of the Foreign Proceedings which do not concern the scope and fate of Decedent's assets, but rather are limited to the question of domicile and jurisdiction.

Section 1782 empowers district courts to order testimony or documents for use in a foreign proceeding, but access to our courts is not a free pass to pry into matters in which the applicant has no interest. Since the courts in the Foreign Proceedings have ruled that Movant has no claim to the assets of Decedent or to information about those assets, she should not be able to use §1782 to obtain that private information. Section 1782 "authorizes but does not require" the district court to provide assistance to a complainant. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004).

Movant requested issuance of the Subpoena in part to support her claim that Decedent's domicile was Gstaad, Switzerland, and not Monaco, in which case the courts of Bern would have jurisdiction. However, by Judgment dated May 4, 2023, the Court of First Instance of the Principality of Monaco confirmed that Decedent was domiciled in Monaco and denied Movant's request for further documents stating that "the Tribunal observes that the parties have produced a considerable number of exhibits and documents, which are sufficient for its information." (*See* Judgment annexed hereto as Exhibit D in original and translated versions at p. 15.) Movant is appealing this Judgment. Meanwhile, proceedings in Lausanne, Switzerland also were decided in favor of Decedent, but an

---

[1] Capitalized terms used and not defined herein shall have the meaning ascribed to them in Mr. Murphy's Letter Request dated May 23, 2023.

[2] Movant's application for status as an heir made to the Swiss court in Bern was rejected even after that court was given the statement of her lawyer, Jürgen Brönnimann ("Brönnimann"), whose similar statement is annexed to Mr. Murphy's Letter Request as part of Exhibit 3, along with an article authored by Oliver Arter, which Movant had also submitted to the Swiss court.



appellate court asked for clarification of certain facts which have now been submitted to that court. Accordingly, the issue of jurisdiction is *sub judice* in both venues and awaiting decisions of the Swiss courts of both Bern and Lausanne.

In any event, Christie's has squarely addressed the information that Movant seeks based on the plain language of the Subpoena and her ex-parte application for issuance of the Subpoena. The document request section of the Subpoena contains only one item: "All documents concerning communications, including consignment agreements and any sales documents executed between Christie's and Maurice Alain Amon, or any representative of Decedent's estate from January 1, 2015 to present." Christie's explained to Movant's counsel that it conducted no transactions with Decedent. Yet, Christie's agreed to search for responsive communications it had directly with Decedent. (*See* Exhibit E annexed hereto, email from Christie's counsel dated April 21, 2023.) Noticeably absent from the Subpoena, however, is a "Definitions" section to give Christie's guidance on the meaning of "representatives of Decedent's estate." Notwithstanding such deficiency, Christie's also agreed to conduct test searches for responsive communications with Silvio Venturi from the date of Decedent's death (July 26, 2019) to the present, *see id.*, based on the representation in Movant's ex-parte application that Mr. Venturi is the de facto executor of Decedent's estate.

As Movant states in her Memorandum of Law, "[t]he discovery sought from Christie's concerns the communications leading to the attempted dissolution of marital assets Decedent caused to be removed from Ms. Amon's residence in New York, and her residence in Paris, France without her permission." (*See* Dkt. No. 3 at p. 2.) The artworks were allegedly removed from these two locations some time in 2015. (Dkt. No. 1 at ¶ 5.) By email from the undersigned to Movant's counsel, dated April 24, 2023, Christie's confirmed that none of these artworks in New York or Paris were sold through the auction house. (*See* Exhibit E.)[3]

To the extent that the Subpoena could be read to request documents beyond the issue of domicile at Decedent's death, it would be overreaching in terms of what the Foreign Proceedings allow. Furthermore, Christie's would be significantly prejudiced and burdened by the disclosure of its business dealings with Artmon Limited and any other third-party entity that Movant attempts to lump together with Decedent, as it would infringe upon Christie's highly confidential and proprietary information. Movant provides no justifiable reason to encroach upon Christie's relationship with Artmon Limited. Indeed, presumably afraid this Court would deny Movant's ex-parte application, Artmon Limited is not mentioned even once in Movant's multiple filings in support of her application.

Accordingly, without waiver of any and all of Christie's rights to object to the Subpoena, Christie's should only be required to produce all communications it had directly with Decedent from 2015 to the present concerning Decedent's domicile, and to the extent not unduly burdensome, all communications with Silvio Venturi from the date of Decedent's death (July 26, 2019) to the present concerning Decedent's domicile.

---

[3] Applicant contends that Decedent caused one of the works allegedly removed from Paris, a painting by the artist Jean-Michel Basquiat, to be shipped to New York and consigned to Christie's for purposes of including the work in a November 2015 auction. As Applicant acknowledges, the Basquiat work was removed from the auction and not sold through Christie's. (Dkt. No. 1 at ¶ 6.)

Hon. Robert W. Lehrburger
June 5, 2023
Page 4



       Thank you for your consideration.

                                               Respectfully submitted,

                                               Joseph A. Patella

Enclosures