# EXHIBIT B

Affidavit of Stephane Lagonico

**AFFIDAVIT**

STÉPHANE LAGONICO, being first duly sworn deposes and says:

1. I am an attorney at law and admitted to practice before the Bar in the Canton of Vaud, Lausanne (Switzerland). I hold a Masters in Swiss Law from the University of Lausanne (Switzerland) and an LLM in European Law from the University of Brussels (Belgium) and am a partner of the law firm of Bonnard Lawson, with offices located at Rue du Grand-Chene 8, 1002 Lausanne, Switzerland. I represent Albert Maximilian Amon, the only child of the late Mr. Maurice Amon, and submit this affidavit to explain that as of today and under Swiss law as applicable to the estate of the late Maurice Amon, Mrs. Espy-Hejailan, the widow of the late Maurice Amon, does not qualify as an heiress to his estate and is not entitled to receive information regarding the assets and liabilities of the estate of the late Mr. Maurice Amon.

2. As evidenced by the heirship certificate (*acte de notoriété*) issued by the Monegasque authority, the late Mr. Maurice A. Amon submitted his estate to Swiss law (professio juris), as authorized by Monegasque private international law (law n. 1.448 of 28 June 2017, article 57), designated his only son as heir to his entire estate and totally disinherited his wife, Mrs. Espy-Hejailan (the spouses had been in divorce proceedings for almost four years at the time the late Mr. Maurice Amon passed away). Swiss law - and only Swiss law - therefore governs (among other things) the status of heir, the disinheritance by will and the possible rights of the disinherited person (law n. 1.448 of 28 June 2017, article 63).

3. **The position of the disinherited person under Swiss law.** Under Swiss law, the law provides that a person (e.g., the wife) who has been totally disinherited is not an heir (neither legal nor reservatory; cf. art. 478 para. 1 of the Swiss Civil Code, hereinafter "CC"), and accordingly is not a member of the community of heirs and has no rights associated with the status of heir (including reservatory). The disinheritance is effective by the mere fact that it is recorded in the will without the need for a court decision. The disinherited person therefore has no right to information regarding the assets and liabilities of the estate[1], which makes sense since he/she could otherwise have access to confidential information (bank statements, etc.) while he/she may never be recognized as an heir.[2]

4. The disinherited person can challenge (by a formative action) the testamentary clause disinheriting her/him, but s/he can only regain the quality of heir (instituted or reservatory), and the rights relating to it, in the event of a definitive judicial decision (formative judgment) invalidating the disinheritance clause. In this case, Mrs. Espy-Hejailan brought this action in three different fora (Bern, Lausanne and Monaco). It is only in the event of a definitive success

---

[1] It should be noted that the disinherited party has a limited right to be informed of the facts underlying his/her disinheritance to be able to effectively contest the disinheritance clause. In the present case, giving way to this right is obviously irrelevant since Mrs. Espy-Hejailan is herself at the origin of the criminal complaints that led to her disinheritance by the deceased and she is the only one, as a civil party, to have access to the criminal files in question.

[2] The situation of an disinherited heir-at-law is therefore very different from that of an heir-at-law whose reserve has "merely" been damaged by the will (e.g., an unnamed heir-at-law or an heir-at-law whose reserve has been mathematically damaged). The latter does not lose his or her status as a reserved heir at any time, and therefore has the rights that are linked to it, in particular the right to information.

in her action that she could regain her status of reserved heir, and therefore the right to information relating thereto. This has been confirmed both by the Swiss judge and the Monegasque (Monaco) judge.

5. **Decisions of the Swiss and Monegasque judges on Mrs. Espy-Hejailan's right to information.** Mrs. Espy-Hejailan filed before the Swiss judge in Thun (Bern) a request on August 16, 2021, that the executor of the will be obliged to provide her with:

   "the inventory of the estate of the late Maurice Amon as of the date of death (July 26, 2019) and to provide the plaintiff with all information on the current situation of the estate (i.e., information on the amount and inventory of all assets and liabilities and the location of assets)." (finding 7)

   The judge refused, holding as follows in his January 27, 2022 decision (cif. 7.2.3) :

   "Further, it is not apparent that the information sought is relevant to the issue of whether the plaintiff has a claim under the matrimonial property regime or the estate against the decedent or his estate. The inventory, amount, and location of the decedent's estate need only be considered in determining the amount of the claim that the plaintiff asserts, and thus are only decisive **once a matrimonial property and/or estate claim by the plaintiff is recognized in principle**." [emphasis added]

6. Before the judge in Monaco, Ms. Espy-Hejailan filed a unilateral motion (*compulsoire*) on September 16, 2019, for the purpose of obtaining from the executor of the will and the family office of the late Mr. Amon, all

   "documents and information relating to assets of any kind acquired, held, administered or managed directly or through trusts, foundations, companies, trustees or agents, in the name and on behalf of the late Maurice Amon at the date of his death".

   The judge refused, holding as follows in his decision of November 28, 2019:

   "It appears from the elements submitted in support of the petition that the status of reservatory heiress of Tracey HEJAILAN widow AMON and the extent of her inheritance rights are obviously subject to contradictory debate and cannot be assessed by the President of the Court ruling on the petition. Thus the applicant does not sufficiently justify a legitimate interest in obtaining the communication of information relating to her alleged inheritance rights.

7. The Swiss and Monegasque judges have therefore reached the same conclusion: Mrs. Espy-Hejailan must first obtain a formative judgment invalidating her disqualification before she can claim a right to information.

8. **The decision of the Supreme Court of Bern of January 14, 2020.**   In this case, the refusal of the courts to give Mrs. Espy-Hejailan access to information is all the more justified since her formative action on the merits (brought in Bern, Lausanne and Monaco) has little chance of success. This is the conclusion of the decision of the Supreme Court of Berne of January 14, 2020. The court underlined the *prima facie* validity of the exoneration [disinheritance] clause

2

provided by Mr. Amon (in the context of provisional measures requested by Mrs. Espy-Hejailan):

> "[I]t must first be noted that **unfounded criminal complaints can quite suffice as grounds for exoneration according to the case law of the Federal Supreme Court** (ATF 76 II 265; 55 II 164; cf. Beispiele aus der Praxis, BESSENICH, Commentaire bâlois relatif au CC, fifth edition 2015, N 14 concerning article 477 CC). With regard to the burden of proof, article 479, paragraph 2 CC provides that the heir who takes advantage of the disinheritance must prove the correctness of his reason. To this extent, it would be sufficient for the plaintiff to simply assert that a reason for disinheritance exists.
>
> This allocation of the burden of proof is only relevant where there is no evidence. This is not the case here: in assessing the evidence for the will and the specific details of article 5 of the will, the Chamber considers that the incidents described therein have been made plausible. This is also because, **in view of the detailed account in the will, after a cursory examination, it seems implausible that the reasons for the disinheritance are a pretext or freely invented. Rather, it can be assumed that the plaintiff actually filed the various complaints. Moreover, the plaintiff does not contest in a reasoned manner that she has filed several complaints against the defendant** [i.e. the deceased]. Rather, she challenges the exoneration [the disinheritance] with the argument of form, in view of the strict conditions for an exoneration, assuming that the challenge to the will will succeed (cf. point 11 above). **Finally, the plaintiff has never argued that the criminal actions taken would have led to a concrete result, i.e. to the conviction of the defendant.**
>
> Other evidence such as the acts of the mentioned proceedings are therefore not required for a prima facie case. **After a summary examination, the Chamber therefore concludes that the plaintiff's exoneration has been rendered likely valid**, no claim arising from inheritance law therefore accrues to her." [emphasis added].

9. Based upon the foregoing, under Swiss law, Mrs. Espy-Hejailan has no right to compel the production of information from Christie's or any other third party based on the allegations that she is an heir of or otherwise entitled to share in the estate of the late Mr. Maurice Amon.

10. I affirm this 24 day of April, 2023, under penalty of perjury under the laws of New York, which may include a fine or imprisonment, that I am physically located outside the geographical borders of the United States, Puerto Rico, the U.S. Virgin Island or any territory or insular possession subject to the jurisdiction of the United States, that the foregoing is true, and that I understand that this document may be filed in an action or proceeding in a court of law.

_____
STÉPHANE LAGONICO, attorney at law

3